MICHAEL M. BARANOV - Bar No. 145137
BARANOV & WITTENBERG, LLP
1901 Avenue of the Stars, Suite 1750
Los Angeles, California 90067
Tel: (310) 229-3500

Attorneys for Plaintiffs, AYMAN KANDEEL and KIRKWOOD DREW

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| AYMAN KANDEEL and KIRKWOOD DREW, <br><br> Plaintiffs, <br><br> -vs- <br><br> BRET SAXON, INSOMNIA MEDIA GROUP, IMG FILM, INCORPORATED, IMG FILM 14, INC., ROB STEIN, and DOES 1-50, inclusive, <br><br> Defendants. | Case No. CV-11-02747 GW (AJWx) <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> 1. **Breach of Contract I** <br> 2. **Rescission** <br> 3. **Breach of Contract II** <br> 4. **Breach of Contract III** <br> 5. **Fraud and Deceit** <br> 6. **RICO Conspiracy** <br> 7. **Money Had And Received** <br> 8. **Conversion** <br> 9. **Constructive Trust and Injunctive Relief** <br> 10. **Unjust Enrichment** <br> 11. **Accounting** <br><br> **[Demand For Trial By Jury]** |

COME NOW, PLAINTIFFS, AYMAN KANDEEL and KIRKWOOD DREW (hereinafter referred to as the "Plaintiffs"), and allege as follows:

1.   At all times herein mentioned, plaintiff AYMAN KANDEEL ("KANDEEL") was an individual residing in the City of Los Angeles, State of California.

2.   At all times herein mentioned, plaintiff KIRKWOOD DREW ("DREW") was an individual residing in the City of Los Angeles, State of California.

3.   Defendant BRET SAXON ("SAXON") is an individual residing in the City of Los Angeles, and doing business within the County of Los Angeles, State of California.  He is the

**FIRST AMENDED COMPLAINT**          1

principal, officer, director, manager and member of co-defendants INSOMNIA MEDIA GROUP, IMG FILM, INCORPORATED, IMG FILM 14, INC. and DOES 1-10.

4.    Defendant INSOMNIA MEDIA GROUP is a business organization, form unknown, doing business within the County of Los Angeles, State of California.

5.    Defendant IMG FILM, INCORPORATED is a corporation organized under the laws of the State of California, and doing business within the County of Los Angeles, State of California.

6.    Defendant IMG FILM 14, INC. is a corporation organized under the laws of the State of California, and doing business within the County of Los Angeles, State of California.

7.    Defendant ROB STEIN ("STEIN") is an individual residing in the City of Los Angeles, and doing business within the County of Los Angeles, State of California.  STEIN is the accountant, bookkeeper, and finance executive of one or more of SAXON's entities, including but not limited to co-defendants INSOMNIA MEDIA GROUP, IMG FILM, INCORPORATED, IMG FILM 14, INC. and DOES 1-20.  STEIN has performed accounting and banking work with and for SAXON for many years, and is intimately familiar with all aspects of the books, records, and banking of SAXON and his entities, including but not limited to INSOMNIA MEDIA GROUP, IMG FILM, INCORPORATED, IMG FILM 14, INC. and DOES 1-20.  Plaintiffs are informed and believe, and thereon allege, that STEIN has maintained the books and records of SAXON and his entities, including those of co-defendants INSOMNIA MEDIA GROUP, IMG FILM, INCORPORATED, IMG FILM 14, INC. and DOES 1-20, and actively participated in various financial transactions and transfers of funds between SAXON and his entities, including co-defendants INSOMNIA MEDIA GROUP, IMG FILM, INCORPORATED, IMG FILM 14, INC. and DOES 1-20, as well as various third party investors, and, as such, was fully familiar with the fraudulent nature of defendants' operations and was an active participant in the scheme operated by defendants.

8.    Plaintiffs do not know the true names of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue them by those fictitious names.

**FIRST AMENDED COMPLAINT**          2

9.      Unless otherwise alleged in this complaint, plaintiffs are informed and believe, and on the basis of that information and belief allege, that at all times mentioned in this complaint, each of the defendants was an agent and/or employee of their codefendants, and in doing the things alleged in this complaint, was acting within the course and scope of that agency and employment.

10.   Plaintiffs are informed and believe, and thereon allege, that each of the individual defendants exercised such control and dominion over the business entity codefendants so as to make them their mere alter egos and instrumentalities and, as a result, each of the business entity codefendants' corporate and/or limited liability company shields should be disregarded and the business entity defendants rendered mere instrumentalities and alter egos of the controlling defendants.

## FACTS COMMON TO ALL CAUSES OF ACTION

A.      SAXON's Appearance of a Luxury Lifestyle

11.      SAXON's lifestyle and professional image are well-known to plaintiffs and others, and SAXON uses that image to project an aura of success and financial solvency.  SAXON owns a 10,900-square-foot home in Pacific Palisades, California, which includes a tennis court, swimming pool, and a film theater, at which he entertains clients and potential investors.  SAXON frequently flies in private jets, often traveling with friends and associates to Las Vegas, to sporting events, and to luxurious destinations.  SAXON has had a number of exotic or luxury cars for his use, and to portray an image of success and wealth, including four (4) Mercedes, a Bentley, and a Ferrari.  SAXON employs a housekeeper, a nanny, a tennis coach at his home, and a personal trainer, that travels with him.  SAXON frequently entertained and used an exclusive Black American Express credit card.  Plaintiffs are informed and believe and thereon allege that neither the automobiles nor the exclusive credit card belong to SAXON, and were owned by third parties and were backed by accounts not issued in SAXON's name, and that defendants, and each of them, knew of the falsity of SAXON's facade.  On numerous occasions, SAXON represented himself to plaintiffs to be an experienced and successful author, executive, businessman, consultant, and motion picture producer.  SAXON's decadent lifestyle was consistent with these representations.

**FIRST AMENDED COMPLAINT**          3

B.    The "Robert DeNiro Presents:  20% Fiction" Investment Contract

12.    In September of 2007, plaintiff KANDEEL wired defendants $1,000,000, which defendants, through their agent defendant SAXON, told him would be used to produce a film entitled "Robert DeNiro Presents:  20% Fiction", written by Barry Primus (the "Motion Picture").  Attached hereto as Exhibit "A" and incorporated by this reference as if set forth in full is a copy of the contract to finance the Motion Picture ("The 20% Fiction Investment Contract").  The $1,000,000 was wired to defendants in a sign of the utmost of good faith and based on defendants' representation that Robert DeNiro was on board to produce, and to grant his name and likeness in connection with "20% Fiction", and that defendants controlled the script for the Motion Picture, written by Barry Primus, and that there were substantial pre-sales of the rights to the Motion Picture.  The transaction was contingent on defendants' controlling the screenplay, as well as their receipt of an additional $3,600,000 from other investors, who decided not to move forward.  Defendants did not secure any additional funds, and never acquired the rights to the Barry Primus screenplay.  Therefore, The 20% Fiction Investment Contract was breached by defendants and/or rescinded.  However, despite repeated requests, the $1,000,000 was never returned to plaintiff KANDEEL.  Instead, defendants have informed KANDEEL that the sum has been spent by them on pre-production.  Plaintiffs are informed and believe, and thereon allege, that defendants' representations pertaining to "20% Fiction" were false and that defendants, and each of them, have in fact spent around $23,000 on pre-production and have converted plaintiff KANDEEL's funds for their own personal use and expenses.

C.    The DREW Loan

13.    In or about February 2007, defendants, through their agent SAXON, represented to plaintiff DREW that they had two motion picture projects for films entitled "Viral" and "Motel Hell", that were represented and packaged by the William Morris Agency and green lit by MGM, and which had been pres-sold internationally for sums in excess of the production budgets.  Defendants characterized these projects as a "slam dunk" and requested plaintiff DREW to lend them the sum of $250,000 for pre-production expenses.  Defendants promised plaintiff DREW that his money would be returned in three months, with interest.  Based on these

**FIRST AMENDED COMPLAINT**          4

representations, on or about February 15, 2007, plaintiff DREW lent defendants $250,000. However, no written contract was ever provided by defendants to plaintiff DREW, despite his repeated requests. When this sum was not returned, defendants continued to tell plaintiff DREW of other deals and projects that they would place him in. None of these ever materialized.

14. In August of 2008, while defendant SAXON was at plaintiff DREW's house, defendant SAXON promised to return the money to plaintiff DREW in full. Thereafter, $30,000 of this sum was returned, leaving a balance owing of $220,000. The check for $30,000 received by plaintiff DREW was drawn on the account of "East Bronx Productions", an entity unknown to plaintiff DREW at the time. Plaintiff DREW is informed and believes and thereon alleges that "East Bronx Productions" was another entity set up by defendants for a different motion picture project using funds of other investors and that defendants' use of this account to repay a portion of funds owed to plaintiff DREW was part of an ongoing interstate Ponzi scheme, operated by defendants. Subsequent to this payment, defendants continued to assure DREW that they fully intended to repay the debt owed to him.

D. <u>The Middle Eastern Themed Motion Picture Consulting Contract</u>

15. Between October 19, 2006 and October 1, 2007, defendants were also paid a total of $300,000 to consult on a Middle Eastern themed motion picture project for plaintiff KANDEEL. Nothing but talk and expensive trips came of this ongoing process, which continued well after the last payment to defendants. Portions of a screenplay provided by defendants months later were not accompanied by any documents supporting their rights to it, rendering it worthless and unusable.

**FIFST CAUSE OF ACTION FOR BREACH OF**

**"ROBERT DENIRO PRESENTS: 20% FICTION" INVESTMENT CONTRACT**

(By plaintiff KANDEEL against defendants BRET SAXON, INSOMNIA MEDIA GROUP, IMG FILM, INCORPORATED, IMG FILM 14, INC., and DOES 1-10)

16. Plaintiff incorporates paragraphs 1 through 15 above as though set forth in full herein.

**FIRST AMENDED COMPLAINT**          5

17.   Plaintiff KANDEEL in September of 2007, has wired defendants $1,000,000, which defendants, through their agent defendant SAXON, told him would be used to produce a film entitled "Robert DeNiro Presents:  20% Fiction", pursuant to the terms of a written agreement, dated September 1, 2007, a copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference as if set forth in full (the "20% Fiction Contract").  This amount was wired by plaintiff to defendants in a sign of the utmost of good faith and based on defendants' representation that Robert DeNiro was on board to produce, and to grant his name and likeness in connection with "20% Fiction" and that Barry Primus has written an original motion picture screenplay by the same name, that defendants have acquired the rights to the Barry Primus screenplay, and that the motion picture would be funded and produced, and that plaintiff would receive his investment back, with interest thereon, and would receive credit on the motion picture.

18.   Plaintiff has performed all of his conditions, covenants, and promises required by him on his part to be performed in accordance with the terms and conditions of the 20% Fiction Contract.

19.   Defendants breached their obligations pursuant to the 20% Fiction Contract, failed to produce any motion picture pursuant to the 20% Contract, failed to acquire the rights to produce any such motion picture, failed to raise the funds necessary to produce any such motion picture, and failed to pay back plaintiff's investment pursuant to the 20% Fiction Contract.

20.   As a result of defendants' breach of the 20% Contract, plaintiff has been damaged in the sum of $1,000,000 with interest thereon.

### SECOND CAUSE OF ACTION FOR RESCISSION OF

### "ROBERT DENIRO PRESENTS:  20% FICTION" INVESTMENT CONTRACT

(By plaintiff KANDEEL defendants BRET SAXON, INSOMNIA MEDIA GROUP, IMG FILM, INCORPORATED, IMG FILM 14, INC., and DOES 1-10)

21.   Plaintiff incorporates paragraphs 1 through 20 above as though set forth in full herein.

**FIRST AMENDED COMPLAINT**             6

22.     Plaintiff KANDEEL in September of 2007, has wired defendants $1,000,000, pursuant to the 20% Fiction Contract.   Defendants breached their obligations pursuant to the 20% Fiction Contract, failed to produce any motion picture pursuant to the 20% Contract, failed to acquire the rights to produce any such motion picture, failed to raise the funds necessary to produce any such motion picture, and failed to pay back plaintiff's investment pursuant to the 20% Fiction Contract.   Therefore, the transaction was rescinded.  However, despite repeated requests, the sum of $1,000,000 was never returned to plaintiff KANDEEL.

23.     Plaintiff KANDEEL requests an order rescinding the "Robert DeNiro Presents: 20% Fiction" Investment Contract and mandating defendants to return the sum of $1,000,000 to him, with interest thereon.

## THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT:
## THE DREW LOAN

(By plaintiff DREW against defendants BRET SAXON, INSOMNIA MEDIA GROUP, IMG FILM, INCORPORATED, IMG FILM 14, INC., and DOES 1-10)

24.     Plaintiff incorporates paragraphs 1 through 23 above as though set forth in full herein.

25.     Plaintiff has performed all of his conditions, covenants, and promises required by him on his part to be performed in accordance with the terms and conditions of the Drew Loan.

26.     Defendants breached their obligations pursuant to the Drew Loan and failed to repay the loan.

27.     As a result of defendants' breach of the Drew Loan, plaintiff DREW has been damaged in the sum of $220,000 with interest thereon.

///
///
///
///
///

**FIRST AMENDED COMPLAINT**          7

## FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT:

## MIDDLE EASTERN THEMED MOTION PICTURE CONSULTING CONTRACT

(By plaintiff KANDEEL against defendants BRET SAXON, INSOMNIA MEDIA GROUP,

IMG FILM, INCORPORATED, IMG FILM 14, INC., and DOES 1-10)

28.     Plaintiff incorporates paragraphs 1 through 27 above as though set forth in full herein.

29.     Plaintiff KANDEEL has performed all of his conditions, covenants, and promises required by him on his part to be performed in accordance with the terms and conditions of the Middle Eastern Themed Motion Picture Consulting Contract, and has paid defendants the sum of $300,000.

30.     Defendants have breached the Middle Eastern Themed Motion Picture Consulting Contract by misutilizing the funds paid therefor, converting said funds for their personal purposes and providing a portion of a screenplay which was not accompanied by any documents supporting their rights to it, rendering it worthless and unusable.

31.     As a result of defendants' breach of the Middle Eastern Themed Motion Picture Consulting Contract, plaintiff KANDEEL has been damaged in the sum of $300,000 with interest thereon.


## FIFTH CAUSE OF ACTION FOR FRAUD AND DECEIT

(By plaintiffs against all defendants)

32.     Plaintiffs incorporate paragraphs 1 through 31 above as though set forth in full herein.

33.     Commencing in May of 2006, and continuing thereafter, in Los Angeles, California, defendants, through their authorized agent, defendant SAXON, made representations to plaintiffs that defendants were competent and successful motion picture producers, that they had pre-sold foreign distribution rights to their motion picture projects for sums in excess of the production budgets, and that if plaintiffs would provide funds to defendants, the funds would be invested in motion picture projects, secured by existing foreign distribution contracts, and that

**FIRST AMENDED COMPLAINT**          8

1   plaintiffs' investments would produce significant returns.  Plaintiffs are informed and believe,

2   and thereon allege, that defendant STEIN, as the financial executive of defendants, was fully

3   familiar with the falsity of these representations and ratified their falsity by participating in the

4   transactions alleged herein, and has conspired with defendant STEIN to so defraud plaintiffs.

5       34.     In reliance on these representations, plaintiffs entered into the Drew Loan, the

6   Middle Eastern Themed Motion Picture Consulting Contract and the "Robert DeNiro Presents:

7   20% Fiction" Investment Contract, and provided defendants with funds totaling $1,520,000.

8       35.     Unbeknown to plaintiffs, defendants' representations were in fact false, because,

9   among other falsehoods, no pre-sale agreements existed and defendants did not even control the

10  underlying rights to the projects which they claimed to be developing and, instead, plaintiffs'

11  funds were converted by defendants for other purposes, as part of an ongoing Ponzi scheme

12  being run by defendants, and to pay for defendants' salaries and personal expenses.  Had the

13  plaintiffs knows the true facts, they would not have entered into any business relationship with

14  defendants and would not have provided any money to defendants.

15      36.     As a result of the pattern of fraud and deceit by defendants, plaintiffs have been

16  injured in the sum of no less than $1,520,000, with interest thereon.

17      37.     All of the aforementioned acts of defendants were willful, malicious and

18  intentional, designed expressly to harm plaintiffs.  As a result, plaintiffs are entitled to exemplary

19  and punitive damages, in an amount sufficient to punish the defendants.

20

21  **SIXTH CAUSE OF ACTION FOR VIOLATION OF RICO (Section 1962(c))**

22  (By plaintiffs against all defendants)

23      38.     Plaintiffs incorporate paragraphs 1 through 37 above as though set forth in full

24  herein.

25      39.     Defendants, and each of them, were associated with an enterprise that engaged in

26  or affected interstate commerce.  Plaintiff is informed and believes and thereon alleges that

27  defendants SAXON and STEIN operated or managed the enterprise through a pattern of

28  racketeering activity, namely soliciting funds from plaintiffs and other similarly situated persons

**FIRST AMENDED COMPLAINT**          9

and entities, through the repeated use of the mail and wire transfers, for fraudulent purposes, such as the $1,520,000 solicited by defendants from plaintiffs, through interstate mail and wires, in connection with the Drew Loan, the Middle Eastern Themed Motion Picture Consulting Contract and the "Robert DeNiro Presents:  20% Fiction" Investment Contract, and the $30,000 paid by defendants to plaintiff DREW from the account of "East Bronx Productions".  Plaintiffs are informed and believe and thereon allege that defendants, and each of them, committed fraud via internet communications, facsimile transmissions, telephone conversations, mail fraud, and wire transfers occurring in interstate commerce, and otherwise defrauded plaintiffs, including but not limited to those allegations set forth above.  Plaintiffs are also informed and believe and thereon allege that defendants threatened and intimidated creditors and witnesses in order to coerce their silence and prevent them from disclosing unlawful and/or fraudulent acts.

40.     The acts of defendants and their co-conspirators as described above against plaintiffs and others have the same or similar purposes, results, participants, victims, or methods of commission, and are otherwise interrelated by distinguishing characteristics and are therefore not isolated events.

41.     The acts of defendants and their co-conspirators as described throughout this complaint amount to or pose a threat of continued and/or ongoing criminal activity.

42.     The acts of defendants and their co-conspirators, including the acts of wire fraud (18 U.S.C. Section 1343) and mail fraud were a regular way of conducting the ongoing business of defendants and their co-conspirators.   Plaintiff is informed and believes that in addition to it, there are other similarly situated persons and parties, which were deceived by the acts of defendants and their co-conspirators.

43.     Defendants and each of them, are entities capable of holding legal or beneficial interests in property and, as such, are subject to the RICO Act pursuant to 18 U.S.C Section 1961(3).  During all relevant times, defendants, and other entities unknown to plaintiff were and are part of an "enterprise" as the term is defined in 18 U.S.C. Section 1961(4), having a common or shared purpose, functioning as a continuing unit, engaged in interstate commerce and the activities which affect interstate commerce, and which has an ascertainable structure distinct

**FIRST AMENDED COMPLAINT**          10

from that which is inherent in the conduct of the pattern of racketeering.  Plaintiff is informed and believes that defendants SAXON and STEIN established numerous subsidiaries or affiliates of IMG, in order to effect the enterprise and deceive investors and creditors.  Plaintiff is informed and believes that SAXON and/or STEIN may have used IMG and/or other business entity defendants to effect the enterprise and deceive investors and creditors.

44.    The wire fraud and mail fraud perpetrated by defendants as alleged above constitutes a pattern of racketeering activity consisting of two or more acts or racketeering activity, on of which occurred after the effective date of 18 U.S.C. Section 1961, et seq., and the last of which occurred within ten years after the commission of a prior act of racketeering activity, as alleged above.

45.    Plaintiff is informed and believes, and on that basis alleges, that at all relevant times, defendants used income derived, either directly or indirectly, from the above-described pattern of racketeering activity in the establishment and/or operation of an enterprise, namely the business entity defendants named herein, which engaged in and/or whose activities affected interstate commerce, in violation of 18 U.S.C. Section 1962(a).

46.    Plaintiff is informed and believes, and on that basis alleges, that at all relevant times, in undertaking the actions described herein, defendants, through a pattern of racketeering activity, directly or indirectly acquired and maintained an interest in and control over an enterprise which engaged in and/or whose activities affected interstate commerce, in violation of 18 U.S.C. Section 1962(b).

47.    Plaintiff is informed and believes, and on that basis alleges, that at all relevant times, in undertaking the actions described herein, business entity defendants, and their officers and employees, were associated with an enterprise, the activities of which affect interstate commerce, and conducted and participated, directly or indirectly, in the conduct of the affairs of the enterprise through above-described pattern of racketeering activity in violation of 18 U.S.C. Section 1962(c).

48.    Plaintiff is informed and believes, and on that basis alleges, that defendants, and each of them, and their officers and employees, conspired with each other and with third parties,

**FIRST AMENDED COMPLAINT**            11

1  to perpetrate the above-described pattern of racketeering, in violation of 18 U.S.C. Section

2  1962(d).

3      49.      As a result of the pattern of racketeering activity by defendants, plaintiff has

4  sustained injury in its property and to its business in the sum of no less than $2,192,500, with

5  interest thereon.  Plaintiff is also entitled to recover treble damages, costs of suit, and attorneys'

6  fees in accordance with 18 U.S.C. Section 1964(c), as Congress has authorized private party

7  enforcement of the RICO statute and reimbursement of attorneys' fees expended therein.

8      50.      All of the aforementioned acts of defendants were willful, malicious and

9  intentional, designed expressly to harm plaintiffs.  As a result, plaintiff is entitled to exemplary

10  and punitive damages, in an amount sufficient to punish the defendants.

11

12          **SEVENTH CAUSE OF ACTION FOR MONEY HAD AND RECEIVED**

13              (By plaintiffs against all defendants)

14      51.      Plaintiffs incorporate paragraphs 1 through 50 above as though set forth in full

15  herein.

16      52.      Plaintiff KANDEEL has provided the sum of $1,000,000 to defendants, and each

17  of them, in connection with the "Robert DeNiro Presents:  20% Fiction" Investment Contract,

18  and $300,000 in connection with services to be rendered and rights to be acquired on the Middle

19  Eastern Themed Motion Picture Consulting Contract.  Plaintiff DREW has provided the sum of

20  $220,000 to defendants, and each of them, pursuant to the Drew Loan.

21      53.      As a result of above-referenced sale, defendants, and each of them, became

22  indebted to the plaintiff KANDEEL for the sum of $1,300,000, and to plaintiff DREW for the

23  sum of $220,000, for money, goods and services had and received by the defendants for the use

24  of the plaintiffs.

25      54.      Despite demands, no payment has been made by defendants to plaintiff and there

26  is now owing the sum of $1,300,000 to plaintiff KANDEEL and $220,000 to plaintiff DREW,

27  with interest thereon.

28

**FIRST AMENDED COMPLAINT**          12

## EIGHTH CAUSE OF ACTION FOR CONVERSION

### (By plaintiffs against all defendants)

55. Plaintiffs incorporate paragraphs 1 through 54 above as though set forth in full herein.

56. Plaintiffs demanded the immediate return of the money owed to them, but defendants failed and refused, and continue to fail and refuse, to return the money owed to plaintiffs, totaling $1,300,000 to plaintiff KANDEEL and $220,000 to plaintiff DREW, with interest thereon, and instead, have converted said funds for their own personal use.

57. As a proximate result of defendants' conversion, plaintiffs have expanded attorneys' fees and costs in pursuit of the converted property, and foregone interest, all to plaintiffs' damage in the sum which will be proven at trial.

58. All of the aforementioned acts of defendants were willful, malicious and intentional, designed expressly to harm plaintiffs. As a result, plaintiffs are entitled to exemplary and punitive damages, in an amount sufficient to punish the defendants.

## NINTH CAUSE OF ACTION FOR CONSTRUCTIVE TRUST

### (By plaintiffs against all defendants)

59. Plaintiffs incorporate paragraphs 1 through 58 above as though set forth in full herein.

60. Defendants' wrongful and fraudulent retention of the money owed to plaintiffs are wrongful and without substantial justification.

61. It is hereby requested that a constructive trust issue, with defendants holding said sums, totaling at $1,520,000, in trust for plaintiffs, until judgment in the within action is rendered.

/ / /

/ / /

/ / /

**FIRST AMENDED COMPLAINT** 13

## TENTH CAUSE OF UNJUST ENRICHMENT

### (By plaintiffs against all defendants)

62.     Plaintiffs incorporate paragraphs 1 through 61 above as though set forth in full herein.

63.     Pursuant to the "Robert DeNiro Presents: 20% Fiction" Investment Contract, the Drew Loan, and the Middle Eastern Themed Motion Picture Consulting Contract, defendants received from plaintiff KANDEEL the sum of $1,300,000 and from plaintiff DREW the sum of $220,000.  Defendants failed to perform their obligations pursuant to the "Robert DeNiro Presents: 20% Fiction" Investment Contract, the Drew Loan, and the Middle Eastern Themed Motion Picture Consulting Contract and, instead, have utilized the sum of $1,520,000 received by them for their own personal benefit.

64.     Defendants will be unjustly enriched unless defendants are ordered to pay to plaintiff KANDEEL the sum of $1,300,000 and to plaintiff DREW the sum of $220,000, with interest thereon.

## ELEVENTH CAUSE OF ACTION FOR AN ACCOUNTING

### (By plaintiffs against all defendants)

65.     Plaintiffs incorporate paragraphs 1 through 64 above as though set forth in full herein.

66.     By virtue of the existence of the "Robert DeNiro Presents: 20% Fiction" Investment Contract, the Drew Loan, and the Middle Eastern Themed Motion Picture Consulting Contract, plaintiffs are entitled to an accounting of defendants' books and records pertaining to each of those contracts and the development of any and all entertainment projects related thereto by defendants.

WHEREFORE, plaintiff KANDEEL prays judgment against defendants, and each of them, as follows:

**FIRST AMENDED COMPLAINT**          14

1.     For compensatory damages in the sum to be proved at trial but no less than $1,300,000.

2.     For damages for the proximate and foreseeable loss resulting from defendants' breach of the 20% Fiction Contract according to proof but no less than $1,000,000, with interest thereon.

3.     For an order rescinding the "Robert DeNiro Presents: 20% Fiction" Investment Contract, and ordering the refund of $1,000,000, with interest thereon.

4.     For damages for the proximate and foreseeable loss resulting from defendants' breach of the Middle Eastern Themed Motion Picture Consulting Contract according to proof but no less than $300,000, with interest thereon.

5.     For general damages in the sum to be proved at trial.

6.     For treble damages

7.     For exemplary and punitive damages in the sum to be proved at trial, but no less than $10,000,000.

8.     For the imposition of constructive trust over sums held by defendants.

9.     For an accounting of defendants' books and records, including those pertaining to the Middle Eastern Themed Motion Picture Consulting Contract and the "Robert DeNiro Presents: 20% Fiction" motion picture project.

10.    For prejudgment interest on all amounts claimed.

11.    For reasonable attorney's fees incurred herein.

12.    For costs of suit incurred herein.

13.    For such other and further relief as the court may deem proper.

WHEREFORE, plaintiff DREW prays judgment against defendants, and each of them, as follows:

1.     For compensatory damages in the sum to be proved at trial but no less than $220,000.

**FIRST AMENDED COMPLAINT**       15

2.     For damages for the proximate and foreseeable loss resulting from defendants' breach of The Drew Loan.

3.     For general damages in the sum to be proved at trial.

4.     For treble damages

5.     For exemplary and punitive damages in the sum to be proved at trial, but no less than $5,000,000.

6.     For the imposition of constructive trust over sums held by defendants.

7.     For an accounting of defendants' books and records, including those pertaining to the Drew Loan and any and all entertainment projects related thereto.

8.     For prejudgment interest on all amounts claimed.

9.     For reasonable attorney's fees incurred herein.

10.    For costs of suit incurred herein.

11.    For such other and further relief as the court may deem proper.


DATED:  April 12, 2011                    BARANOV & WITTENBERG, LLP


                                          By: _____
                                                MICHAEL M. BARANOV
                                                Attorneys for Plaintiffs


## DEMAND FOR TRIAL BY JURY


Plaintiffs demand that this case be tried by a jury.


DATED:  April 12, 2011                    BARANOV & WITTENBERG, LLP


                                          By: _____
                                                MICHAEL M. BARANOV
                                                Attorneys for Plaintiffs


**FIRST AMENDED COMPLAINT**          16

# EXHIBIT "A"



September 1, 2007

Re:    "20% Fiction"

        This letter confirms the terms of the agreement between IMG Film inc. (referred to as "Company") and your firm, ("Financier") with respect to the proposed production, distribution and exploitation of a motion picture based on the original screenplay currently entitled "20% Fiction" ("Picture") written by Barry Primus. Company and Financier are referred herein individually as "Party" and collectively as "Parties."

WHEREAS, Company intends to produce the Picture in the Winter of 2007/8 with principal photography commencing on or about November 25, 2007.

WHEREAS, Financier agrees to provide production financing for the Picture in the amount of U.S. $ 4,612,634.44 (Four Million, Six Hundred Twelve Thousand, Six Hundred Thirty Four Dollars and Forty-Four Cents) ("Financing").

In consideration of the mutual promises contained herein the sufficiency of which is hereby agreed and acknowledged, the parties agree as follows:

1. In the event Financier actually provides the Financing on or before September 21, 2007, Financier shall be entitled to the following from 100% of any and all revenues actually received by Company, its parents, subsidiaries or affiliates, or any entity on its behalf, from the exploitation of the Picture (including any exploitable rights therein or elements thereof), worldwide, in any and all markets and any and all media now known or hereafter devised, from all sources:

a. Recoupment of the Financing. Such recoupment shall be out of first revenues in, and in first position relative to any other financier, if any. Amount to be recouped is US $5,300,000, which reflects actual Financing, plus interest and financing fee. In addition, Financier shall be entitled to such recoupment after Company has paid the following sums, if applicable, and Producer shall be entitled to maintain a reasonable reserve to cover anticipated amounts due under sub-paragraphs (i) and (ii) below:

(i) payments due to unions or guilds having jurisdiction over the Picture for residuals (including any music re-use or new use fees) in connection with the Picture, but only to the extent not paid by the distributor(s) of the Picture;

(ii) any actual, direct, out-of-pocket costs and expenses of auditing, administering and collecting moneys paid and/or owing to Company from distributors and/or other licensees of the Picture and of paying taxes and other administrative expenses of Company;

(iii) the fee and expenses payable to any third party sales representative or sales agent and distribution attorney for the Picture; and,

(iv) third party accounts payable or executory obligations of Company which are directly in connection with the production, delivery, sales, marketing, promotion and publicity of the Picture (e.g., for creation of delivery items prior to complete delivery of the Picture to all distributors, and for storage of Picture elements); provided, however, if that if amounts payable under this paragraph 1(a)(iv) would cause the budget of the Picture to exceed $5.5 million, then Company shall obtain Financier's approval of such expenses, failing which such expenses may not be recouped against sums payable to Financier under this agreement.

b. Following recoupment of the amounts specified in paragraph 1a above and payment of any and all deferred compensation to persons rendering services or granting rights in connection with the Picture, Financier shall receive contingent compensation in an amount equal to 25% of any and all revenues generated from any further exploitation of the Picture in perpetuity throughout the universe in all media known or developed in the future.

c. Financier shall receive three credits as Executive Producers in the main titles of the final release print of the Picture. The size and placement of said credit is left solely to Company's discretion.

d. Financier shall have the first opportunity to participate as a financier on any sequels, remakes or other programs derived from the Picture.

2. Parties agree that for a transaction of this nature more formal documents may be required to effect the ultimate purpose of this Agreement and do hereby agree to incorporate the terms and conditions of this letter Agreement into said documents, if any. Parties agree to negotiate in good faith terms and conditions not contained herein using the standards and customs of the theatrical motion picture industry for such negotiations. Unless and until such further documents

are executed, if ever, this Agreement shall bind and inure to the benefit of the Parties, their successors and assigns.

3. Except as otherwise expressly provided herein, all creative, artistic and business decisions relating to the development, production, distribution and other exploitation of the Picture shall remain in Company's sole discretion.

4. This Agreement is governed by the laws of the State of California.

5. The Parties represent and warrant and agree that each has the right to enter into this Agreement and neither is subject to any obligation or disability which will or might prevent one of the Parties from keeping and performing the covenants and conditions herein.

6. This Agreement contains the full and complete understanding between the Parties and supercedes all prior agreements and understandings whether written or oral and cannot be modified except by a written instrument signed by both Parties. Each Party acknowledges that neither Party, nor their agents nor representatives made any representation or promise not expressly contained in this Agreement.

7. In the event of any dispute hereunder, Financier's remedy shall be limited to an action at law for money damages, and in no event shall Financier have the right to seek injunctive or other equitable relief.

If the foregoing comports with your understanding of our Agreement please countersign below.

Sincerely,
IMG Film, Inc.

_____

Bret Saxon, Chairman

AGREED AND ACCEPTED:

_____

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the aforesaid County, State of California; I am over the age of 18 years and not a party to the within action; my business address is 1901 Avenue of the Stars, Suite 1750, Los Angeles, California 90067.

On April 13, 2011, I served the foregoing **FIRST AMENDED COMPLAINT** on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope, addressed as follows:

Andrew V. Jablon, Esq.
Resch, Polster & Berger
9200 Sunset Boulevard, Suite 900
Los Angeles, CA  90069-3604

Ronald Richards, Esq.
P.O. Box 11480
Beverly Hills, CA  90213

Dana M. Cole, Esq.
Cole & Loeterman
1925 Century Park East, Suite 2000
Los Angeles, CA  90067

__X__ **BY MAIL:**  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Serviced on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.   I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing an affidavit.

_____ **STATE:**  I declare under penalty of perjury that the foregoing is true and correct.

__X__ **FEDERAL:**  I declare that I am employed in the office off a member of the bar of this court at whose direction the service was made

Executed this 13th day of April, 2011, at Los Angeles, California.

Susannah Gross

**FIRST AMENDED COMPLAINT**          17